ALEJANDRO SALGADO RIVERA, FISCAL ESPECIAL INDEPENDIENTE, demandante y recurrido, *v.* PEDRO J. ROSSELLÓ GONZÁLEZ, GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y peticionario.

*Número:* CE-93-62          *Resuelto:* 12 de marzo de 1996

---

258

*Reina Colón de Rodríguez, Procuradora General Interina, Rose Mary Corchado Lorent, Subprocuradora General Interina, y María Adaljisa Dávila, Procuradora General Auxiliar,* abogadas del peticionario; *Alejandro Salgado Rivera, Lillian Cruz Fortier, Ramón Crespo Nieves* y *Nilka Marrero García,* abogados del recurrido.

— o —

Opinión disidente del Juez Asociado Señor Negrón García.

I

La cláusula constitucional de *continuidad presupuestaria* consagrada en el Art. VI, Sec. 6 de la Constitución del Estado Libre Asociado,[1] ¿permanece activa aún después de que la Asamblea Legislativa haya aprobado el presupuesto anual funcional?

Mediante Sentencia de 18 de febrero de 1993, un panel del entonces Tribunal de Apelaciones, Sección Norte, (Hons. Jueces Sánchez Martínez y Segarra Olivero, con el disentir de la Hon. Juez Ramos Buonomo) dictaminó en la afirmativa y expidió un *mandamus* para ordenar al Primer Ejecutivo (Hon. Pedro Rosselló González, como demandado en sustitución del Hon. Rafael Hernández Colón, según la Regla 22.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III) que asignara los fondos necesarios para los gastos de funcionamiento de la Oficina del Fiscal Especial Independiente para el caso del Cerro Maravilla (en adelante Oficina del F.E.I.), Lcdo. Alfredo Salgado Rivera.

Con todo respeto al criterio mayoritario, debemos enfrentarnos y resolver tan importante controversia constitucional, y no evadirlo mediante el tecnicismo de "academicidad". Estamos ante una controversia viva y el recurso no es académico porque la Asamblea Legislativa

---

[1] Dispone:

"Cuando a la terminación de un año [fiscal] económico no se hubieren aprobado las asignaciones necesarias para los gastos ordinarios de funcionamiento del gobierno y para el pago de intereses y amortización de la deuda pública durante el siguiente año económico, *continuarán rigiendo las partidas consignadas en las últimas leyes aprobadas para los mismos fines y propósitos, en todo lo que fuesen aplicables, y el Gobernador autorizará los desembolsos necesarios a tales fines hasta que se aprueben las asignaciones correspondientes.*" (Énfasis suplido.) L.P.R.A., Tomo 1, ed. 1982, págs. 368–369.

haya eliminado la Oficina del F.E.I. y su cargo mediante la Ley Núm. 7 de 15 de abril de 1993 (3 L.P.R.A. sec. 90n). *Primero*, plantea una trascendental y legítima controversia constitucional susceptible, por los propios términos del Art. VI, Sec. 6, Const. E.L.A., *supra*, de *repetirse* todos los años. *Segundo*, la cuestión no es abstracta. La Asamblea Legislativa no aprobó a la Oficina del F.E.I. presupuesto alguno para cubrir sus gastos de funcionamiento durante el Año Fiscal 1992–1993; *quaere* la validez de la autorización del Gobernador para ordenar el desembolso de trescientos ochenta mil dólares ($380,000) como "adelanto". *Tercero*, como correctamente discute en su comparecencia el recurrido licenciado Salgado Rivera, su reclamo exige de forma colateral precisar, entre otras cosas, quién tiene la responsabilidad legal de cubrir los gastos adicionales desde que se agotaron los fondos de la Oficina del F.E.I. Y *cuarto*, la Ley Núm. 7, *supra*, que derogó dicha oficina y eliminó el cargo de Fiscal Especial Independiente no disipa estas cuestiones. Sólo dispone de forma lacónica la transferencia al Secretario de Justicia de su propiedad, incluyendo expedientes, documentos, expedientes y archivos; inexplicablemente nada dispuso en cuanto a la liquidación y al pago de las obligaciones dinerarias previas contraídas por dicho funcionario, que no han sido satisfechas al presente.[2]

---

[2] El ex Fiscal Especial Independiente nos dice:

"El Lcdo. Salgado postula que él tenía la obligación y el derecho, protegido por la Ley núm. 1, [*supra*], que estaba vigente, a ejercer los deberes de su cargo y a mantener funcionando su oficina hasta tanto se diera uno de los siguientes tres actos:

"1. que completara su investigación y procesamiento dispuestos en los Artículos 2 y 3 de dicha Ley, y rindiera el informe final, según requerido en los Artículos 8 (2) y 10 de la misma; o

"2. que fuera destituído de su cargo, por cualquiera de las causas establecidas en el Artículo 9 de dicha Ley, luego de que le probaran los cargos en armonía con los requisitos del debido proceso de ley; o

"3. que el cargo y la Oficina fueran derogados mediante ley aprobada por LA ASAMBLEA LEGISLATIVA.

"También postula el Lic. Salgado que durante el período desde el 1 de julio de 1992 al 14 de abril de 1993, él tenía derecho, protegido por el Artículo 6 de la Ley de Relaciones Federales, a que el Secretario de Hacienda pusiera a su disposición, de los

En resumen, la importancia de adjudicar definitiva y finalmente estas interrogantes constitucionales y estatutarias revela que el recurso *no es académico*. A fin de cuentas, según nuestra ley fundamental este Tribunal, "como foro de última instancia, es el único cuyos pronunciamientos y fallos pueden originar la doctrina de la aplicación del precedente judicial (*stare decisis*). Sec. 6, Art. V, Const.

---

fondos a su cargo, los dineros necesarios para sufragar los gastos de funcionamiento de la OFEI. Postula, además, que no habiendo sido aprobada una nueva asignación presupuestaria mientras el cargo existía, el Artículo VI, Sección 6 de nuestra Constitución provee el mecanismo para atender la situación e impedir que se eliminen por ficción administrativa cargos y agencias, función que le compete a la Asamblea Legislativa, mediante legislación general, y no al Gobernador de Puerto Rico, en su carácter de Primer Ejecutivo, ni a los procesos presupuestarios. ...

"*Por tanto, los contratos de servicios relacionados con las operaciones del FEI durante el período del 1 de julio de 1992 al 14 de abril de 1993 están protegidos por dichas disposiciones, han sido pagados válidamente, y lo que se adeuda es legalmente exigible.* ...

"Por su parte, el demandado-recurrente alega que él no tiene ningún deber ministerial que cumplir y que los $380,000.00 de fondos públicos que se le adelantaron al FEI *fue por un error de interpretación del Departamento de Hacienda*. Alega, además, que fue la Asamblea Legislativa quien determinó no asignarle fondos al FEI y estar impedido legalmente de efectuar dichos desembolsos. ...

"Este Honorable Tribunal debe resolver la controversia de si el FEI tenía que *dejar de desempeñar los deberes de cargo y a partir de qué fecha. También debe resolver si las actuaciones del Gobernador fueron válidas.* Esta no era y no es una controversia cuya solución sea ficticia y mucho menos colusiva. *Por el contrario, si el FEI debió cerrar la agencia en las circunstancias de este caso, todos los gastos de operaciones desde el 1 de julio de 1992 y todos los contratos suscritos por el FEI en el inicio del año fiscal 1991–1992 fueron nulos.*

"Esta es una controversia muy real, *que envuelve la utilización de más de $560,000.00 de fondos públicos, el reembolso del Sistema de Retiro inclusive. El Lic. Alejandro Salgado Rivera tiene el derecho a que esa controversia se adjudique en los méritos y a no tener en sus espaldas una espada de Damocles sobre pleitos futuros. Y ese no es un daño imaginario, ni un interés efímero o insustancial.*

"Además, es de conocimiento general en el país, porque se ha publicado en los medios de difusión pública en más de una ocasión, que el actual Presidente de la Comisión de lo Jurídico del Senado y el actual Comisionado Residente han manifestado su intención de investigar a las personas que participamos en la investigación de los sucesos del Cerro Maravilla. Los funcionarios y empleados que trabajamos en la Oficina del Fiscal Especial Independiente le daremos nuestra mayor colaboración a esa o a cualquier otra investigación que se decida realizar en su día, por cualquier organismo competente. Conocemos muy bien las normas que rigen ese asunto. Sin embargo, el haber aceptado cargos públicos no significa que hemos renunciado a nuestro derecho a vivir tranquilos.

"*Por otra parte, el pueblo de Puerto Rico tiene el derecho a saber si el Fiscal Especial Independiente y la Oficina que representa dispusieron ilegalmente de fondos públicos, al utilizarlos para los gastos de funcionamiento de su agencia y, de ser así, a que se fije responsabilidad por esos hechos.*" (Énfasis suplido.) Escrito en cumplimiento de orden, págs. 6–9.

E.L.A., L.P.R.A., Tomo 1". *Desig. Comité Esp. Secretariado Conf. Jud.*, 131 D.P.R. 526 (1992). Expongamos los antecedentes fácticos del recurso.

## II

Mediante la Ley Núm. 1 de 18 de enero de 1985 (3 L.P.R.A. sec. 90n) se creó el cargo de Fiscal Especial Independiente (en adelante el F.E.I.) para investigar y procesar —en lo penal, civil y administrativo— a los responsables de los hechos acaecidos en el Cerro Maravilla en 1978. Dicho estatuto delineó, entre otros extremos, las facultades del F.E.I.; estableció el término del cargo, y le asignó los fondos necesarios para que pudiera llevar a cabo su gestión. Conforme a lo alegado por el F.E.I., y de ninguna forma contradicho, para el ordenado desempeño de sus deberes debía organizar y mantener funcionando su oficina, nombrar personal *y efectuar los contratos de los servicios necesarios para cumplir a cabalidad con su encomienda legal.*

El 6 de noviembre de 1991 la Asamblea Legislativa aprobó la Resolución Conjunta Núm. 338 que concedió a la Oficina del F.E.I. la cantidad de ochocientos noventa y ocho mil dólares ($898,000) para el Año Fiscal 1991–1992. No obstante, al finalizar dicho año, no había hecho lo propio para el nuevo año fiscal.

El 22 de junio de 1992 el entonces Secretario de la Gobernación, Sr. Oscar Rodríguez, le informó al F.E.I. que de no aprobarse a tiempo la asignación presupuestaria, la Oficina de Presupuesto y Gerencia contabilizaría los fondos necesarios para pagar la nómina de modo que los empleados pudieran cobrar sus sueldos normalmente. Debido a que la Asamblea Legislativa no aprobó los fondos, el Departamento de Hacienda le adelantó trescientos ochenta mil dólares ($380,000).

Así las cosas, para el 30 de noviembre de 1992 la Oficina

del F.E.I. sólo tenía en su cuenta en el Banco Gubernamental de Fomento un balance de $105,876.88 y las obligaciones contraídas que estaban pendientes de pago ascendían a $529,758.90: con el Departamento de Hacienda y sobre la renta del local, agua, luz y teléfono, contratos de mantenimiento, servicio de seguridad, ascensores y propiedad bajo su custodia, así como, licencias acumuladas y servicios profesionales.

Con vista a esta situación, el 1ro de diciembre de 1992 el F.E.I. solicitó al Tribunal de Apelaciones, Sección Norte, un *mandamus* contra el entonces Gobernador, Hon. Hernández Colón, para que cumpliera con el deber ministerial de autorizar el desembolso dinerario necesario y mantener funcionando la Oficina del F.E.I. o, en su defecto, relevara al F.E.I. de toda su responsabilidad "por la investigación y evidencia, archivos y propiedad del Estado que tiene bajo su custodia ... [y] de todas las obligaciones económicas vencidas que contrajere en relación al descargo de sus funciones". Apéndice, Anejo II, pág. 94. Además, pidió que el Tribunal de Apelaciones tomara posesión de la propiedad bajo su custodia.

El 18 de febrero de 1993 el Tribunal de Apelaciones emitió la Sentencia antes referida y fundamentó su dictamen en que la Resolución Conjunta Núm. 338 era una ley de asignación que se renovaba anualmente.

## III

En los *méritos*, el texto constitucional transcrito no admite la interpretación del Tribunal de Apelaciones; procede revocar. Está fuera de toda discusión que al finalizar el Año Fiscal 1991–1992, la Asamblea Legislativa no aprobó "las asignaciones necesarias para los gastos ordinarios de funcionamiento del gobierno y para el pago de intereses y amortización de la deuda pública durante el siguiente año económico". Const. E.L.A., *supra*, pág. 368. Por ende, desde

el 1ro de julio de 1992 se activó la disposición constitucional aludida y continuaron "rigiendo las partidas consignadas en las *últimas leyes aprobadas*".

Ciertamente, desde ese momento el Gobernador tenía el deber y legítimamente podía autorizar los desembolsos necesarios. Sin embargo, esa facultad *cesó* al aprobarse las asignaciones correspondientes; esto es, al entrar en vigor la Ley General del Presupuesto el 10 de julio de 1992.

Es obvio que la falta de asignación presupuestaria para el Año Fiscal 1991–1992 privó a la Oficina del F.E.I. de continuar operando por falta de éstos.

## IV

No estamos ante una resolución o asignación legislativa *autorrenovable*, esto es, aquel recurso del fondo general autorizado por la Asamblea Legislativa para fines específicos y que se repite anualmente, hasta que dicho cuerpo determine otra cosa. *Cf. Hernández Torres v. Gobernador*, 129 D.P.R. 824 (1992), opinión disidente. *Todo lo contrario*. En virtud del Art. 11 de la Ley Núm. 1, *supra* —creadora del cargo del F.E.I.— para los años subsiguientes dicho funcionario tenía la obligación de acudir, presentar y solicitar su "presupuesto *directamente* a la Asamblea Legislativa". De hecho, a partir de su creación así lo hizo y la Asamblea Legislativa siempre lo aprobó mediante resoluciones conjuntas, hasta el Año Fiscal 1991–1992.([3])

"No podemos dejar de remachar que, bajo nuestra Constitución, los presupuestos son anuales. ... Ninguna ley, re-

---

([3]) La Ley Núm. 1 de 18 de enero de 1985 (3 L.P.R.A. sec. 90) le asignó inicialmente *$750,000*. Subsiguientemente tenemos la Res. Conj. Núm. 92 de 14 de julio de 1985, $1,590,000; Res. Conj. Núm. 52 de 3 de junio de 1986, $1,150,940; Res. Conj. Núm. 6 de 16 de julio de 1987, $9,165,000; Res. Conj. Núm. 115 de 13 de julio de 1988, $1,150,000; Res. Conj. Núm. 114 de 17 de agosto de 1989, $1,150,940; Res. Conj. Núm. 429 de 19 de agosto de 1990, $898,000, y la última, Res. Conj. Núm. 338 de 6 de noviembre de 1991, $898,000, para un total de *$16,752,880*.

glamento o acto ejecutivo pueden contrariar la Constitución." (Énfasis en el original suprimido.) *Hernández Torres v. Gobernador*, supra, pág. 863, opinión disidente. Independientemente de la sabiduría o no de la inacción presupuestaria al respecto por el anterior Primer Ejecutivo y la Asamblea Legislativa —y los actuales incumbentes— *la interpretación del Tribunal de Apelaciones es exógena al debate, a la intención y al texto constitucional. No puede prevalecer.*

Debimos expedir y así adjudicarlo.